HALL, Judge.
Plaintiff, a plumbing contractor, brought this suit in the First City Court for the City of New Orleans to recover the sum of $932.98 for plumbing and sewer repairs performed on the premises 4115 State Street Drive in the City of New Orleans under a verbal contract with the defendant owner thereof. Judgment was rendered in plaintiff’s favor as prayed for, and defendant appealed.
There is no dispute that defendant engaged plaintiff’s services on a time and material basis (“cost plus”) to repair a clogged sewer on the premises and to perform related plumbing repairs. The only dispute relative to this verbal contract is whether plaintiff gave defendant a rough estimate of $300.00 for the cost of the work. The Trial Court evidently found that plaintiff did not, and the record supports his finding in this regard.
Of the amount sued for by plaintiff the only item in dispute is plaintiff’s charge of $714.00 for 102 hours labor of two sewer men at $7.00 per 2-men hour. The record reveals that two sewer men employed by plaintiff actually worked between them a total of 204 hours on the job, making a total of 102 2-men hours. Defendant contends that the charge of $7.00 per 2-men hour is unreasonable and that the work could have been done in less time.
Plaintiff adduced the testimony of Mr. Robert Dexheimer, a plumbing inspector for the Sewerage and Water Board who testified that he had been in the plumbing business himself at one time; that as a plumbing inspector he was constantly in contact with plumbers generally in the City of New Orleans, their employees, operations and works; and through these general contacts was familiar with the rates prevailing in the community for their services. He stated that his familiarity with the rates came from general discussions with master plumbers concerning their charges for various types of work.
At this point in Mr. Dexheimer’s testimony defendant’s counsel objected to any testimony by him as to the prevailing rates in the city “unless he is qualified as a master plumber.” The Trial Court permitted Mr. Dexheimer to testify “not as a practicing master plumber” but “from his experience in his position with the Sewerage and Water Board.”
Thereupon Mr.- Dexheimer testified that $7.00 an hour for a sewerman and helper, which rate includes all overhead, supervision, expenses of a truck and profit is “in general what is charged by reputable contractors throughout the city.”
Mr. Jack B. Mayer, an employee of Latter & Blum, real estate agents, testifying on behalf of plaintiff stated that he actively handled the managerial contract between defendant and his firm covering the premises involved in this suit. He further stated that plaintiff does a great deal of repair work for his firm and for that reason gives them a preferential rate, and that the $7.00 rate for sewer work was the rate usually charged by plaintiff and was considered by his office as a preferential rate “considering Mr. Lawrence’s ability.” The contract in question here was not made through Mr. Mayer but was a direct contract between plaintiff and defendant. All Mr. Mayer did in the instant case was to tell plaintiff to contact defendant relative to the repairs because he felt it might be a large job.
Defendant adduced- the testimony of Mr. John Higgins who stated that he was a master plumber and the head of a plumbing firm located in Jefferson Parish. He stated that approximately 50% of his firm’s work was done in Orleans Parish and consisted mostly of new construction and remodeling work on large public buildings. He admitted that there is a definite differential between large new work and small repair, residential work. He also admitted *429 that plumbers engaged in new construction work seldom, if ever, take repair jobs, and finally admitted that he had never had a single stopped up sewer job in the City of New Orleans.
Plaintiff’s counsel objected to any testimony from Mr. Higgins on the ground that he was not qualified to testify to sewer repair rates in the City of New Orleans. The Trial Judge ruled that he would permit Mr. Higgins to testify as to what he, himself, would charge but would not recognize him as an expert on repair work prices in the city.
Thereafter Mr. Higgins testified that he had visited the premises 4115 State Street Drive about a week before the trial and looked at the areas where work apparently had been done. He stated that from his observation he did not think it should have taken 102 2-men hours of sewermen’s labor to do the job; that in his opinion it could have been done by 1 man in 7 working days at the most. He further testified that his charge for sewermen’s labor, including overhead, etc. would have been $2.40 per hour per man or $4.80 per 2-men hour, and that plaintiff’s charge was excessive by $2.20 per 2-men hour. Assuming that the work actually required 102 2-men hours, Mr. Higgins testified that his charge would have been more than $400.00 less than was charged by plaintiff.
Plaintiff testified that the unusual amount of time taken to repair the sewer line was due to two factors both beyond his control but one of which was the direct result of the fault of defendant or his agents. The two factors are: (1) the complete absence of any surface indication of a main sewer cleanout which it subsequently developed was caused by defendant having laid his concrete driveway over the top of it instead of bringing it to the surface with an appropriate metal cover, thus completely obliterating it; and (2) the discovery, after final location of the cleanout, that the Sewerage and Water Board’s main sewer line in the street was clogged up and unserviceable and required re-grading and replacement by the Board at a lower depth, which, in turn, required the re-grading of defendant’s sewer system. Both of these factors contributed to making the job arduous and time-consuming. In addition thereto plaintiff was faced with the necessity of- breaking up and eventually relaying part of the concrete driveway.
Plaintiff further testified that after he had dug up a good portion of the old sewer line he was afraid the job was expanding and wanted defendant to be aware of it. He testified that he went to defendant’s drug store and after waiting a half hour for him to finish a telephone call, said to him: “ ‘Mr. Lucas, I think you should come up to the job to see what is being (sic) transpired and to get some kind of an idea of what the job is running,’ and he stated that someone told him it would run two or three hundred dollars * * * ” Defendant never visited the job.
As defendant recalled this conversation it was only a telephone call from plaintiff to ask him if he had been there to see it “and it was a busy time of the year and in the winter season we are busier than we normally are.”
Defendant contends that the Trial Court erred in permitting opinion and hearsay testimony from Mr. Dexheimer who was not qualified as an expert or as an active master plumber. We find no error in the Trial Court’s ruling. As this Court said in Calvert Fire Insurance Company v. Grotts, 136 So.2d 836 (certiorari denied March 16, 1962):
“ * * * The value o'f services depends upon local practice and custom and the knowledge of the witness as to such practice and custom. One need not be an expert to testify as to what is a fair price for a particular service in a given community. The question addresses itself to the effect to he given such testimony, not to its admissibility. Womack v. Burka, *430 206 La. 251, 19 So.2d 127.” (emphasis supplied)
Such testimony is necessarily based to a large extent on hearsay.
 Defendant also contends that the Trial Court erred in failing to recognize his witness, Mr. Higgins, as an expert. We find no error in the Court’s ruling in this regard. It was shown that Mr. Higgins is a master plumber but it was not shown that he had any knowledge of the prevailing rates in the City of New Orleans for sewer repairs. As a matter of fact Mr. Higgins was permitted to testify, and did testify, as to what he would have charged for the job and this testimony apparently was all he was qualified to give.
We find no manifest error in the Trial Court’s allowance of plaintiff’s claim for $714.00 for the sewer repairs. That this was a much bigger job than anyone originally contemplated is readily admitted by plaintiff. However’ the fact remains that 102 2-men hours of sewermen’s labor was actually expended on the job. Considering the difficulties encountered we are in no position to say that the job did not necessitate this amount of labor. Mr. Higgins’ testimony that one sewerman could have completed the job in a maximum of 7 days cannot be seriously considered due to the fact that Mr. Higgins had no accurate knowledge of the work done and no knowledge at all of the difficulties encountered.
As to the sewer repair rates charged by plaintiff we find no manifest error in the Trial Judge’s evaluation of the testimony of Mr. Dexheimer and Mr. Mayer as opposed to that of Mr. Higgins.
Finally defendant contends' that the Trial Court erred in assessing costs against defendant “notwithstanding prematurity of plaintiff’s claim.” No objection of prematurity was either filed, argued, or passed upon by the Trial Court. What defendant has reference to is his contention in this Court that plaintiff’s suit was premature when filed, in view of the fact that plaintiff had never obtained a certificate of compliance from the Sewerage and Water Board. The short answer to this is that the obtaining of such a certificate for the type of work performed by plaintiff was, unnecessary under the provisions of Section 2.6.1 and Section 3.1 of the Plumbing Code, as shown by a decision of the Plumbing Conference Committee of the Sewerage and Water Board (filed in evidence) which states “ * * * that it was neither necessary for the plumber to file an application, nor for the Board to inspect the work in this matter.”
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Affirmed.